**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| GENESIS LABORATORY MANAGEMENT LLC, | Case No. 3:21-cv-12057-ZNQ-TJB |
| Plaintiff, | |
| v. | **Motion Day: August 2, 2021** |
| UNITED HEALTH GROUP, INC., UNITED HEALTHCARE SERVICES, INC., OXFORD HEALTH PLANS, INC., | *Document Filed Electronically* |
| Defendants. | |

---

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

---

Jenny Kramer
Christopher J. Borchert
**ALSTON & BIRD LLP**
90 Park Avenue
New York, New York 10016
Tel. (212) 210-9400
Fax (212) 210-9444
Jenny.Kramer@alston.com
Christopher.Borchert@alston.com

William H. Jordan (admitted *pro hac vice*)
Jordan Elise Edwards (admitted *pro hac vice*)
**ALSTON & BIRD LLP**
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309
Tel. (404) 881-7000
Fax (404) 881-7777
Bill.Jordan@alston.com
Jordan.Edwards@alston.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND .................................................................................... 2

LEGAL STANDARD................................................................................................ 5

ARGUMENT ........................................................................................................... 6

I.  COUNT I AND COUNT VI FAIL AS A MATTER OF LAW BECAUSE THERE
    IS NO PRIVATE RIGHT OF ACTION UNDER THE FFCRA, THE CARES ACT,
    THE HINT ACT, OR HCAPPA ....................................................................... 6

    A.  There Is No Private Right Of Action Under The FFCRA Or The CARES
        Act........................................................................................................... 6

        1.  No express private right of action. .............................................. 7

        2.  No implied private right of action................................................ 7

    B.  There Is No Private Right Of Action Under The HINT Act Or HCAPPA. ............ 9

II. COUNTS II THROUGH VI FAIL BECAUSE THEY ARE PREEMPTED BY
    ERISA ............................................................................................................10

    A.  Relief To Genesis Must Come, If At All, Through ERISA's Exclusive
        Enforcement Scheme. ...............................................................................10

    B.  ERISA Broadly Preempts State Law Claims That "Relate To" An Employee
        Benefit Plan Governed By ERISA.............................................................. 12

    C.  Genesis's Contract Claims (Counts II and III) And Estoppel Claim (Count
        V) Are Preempted. ................................................................................... 13

    D.  Genesis's Unjust Enrichment & Quantum Meruit Claims (Count IV) Are
        Preempted. ............................................................................................... 15

III. GENESIS FAILS TO STATE A CLAIM FOR BREACH OF IMPLIED
     CONTRACT (COUNT II), BREACH OF THE IMPLIED COVENANT OF
     GOOD FAITH AND FAIR DEALING (COUNT III), PROMISSORY ESTOPPEL
     (COUNT V), AND VIOLATIONS OF NEW JERSEY HINT ACT & HCAPPA
     (COUNT VI) .................................................................................................. 17

    A.  Genesis Fails To State A Claim For Breach Of Implied Contract (Count II).
        .................................................................................................................. 17

    B.  Genesis Fails To State A Claim For Breach Of The Covenant Of Good Faith
        And Fair Dealing (Count III). .................................................................. 21

      C.      Genesis Fails To State A Claim For Promissory Estoppel (Count V)................... 22

      D.      Genesis Fails To State A Claim For Violations Of New Jersey HINT Act & HCAPPA (Count VI) ............................................................................................ 23

IV.    UNITEDHEALTH GROUP INCORPORATED SHOULD BE DISMISSED............... 25

CONCLUSION ............................................................................................................................. 26

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*1975 Salaried Ret. Plan for Eligible Emps. of Crucible, Inc. v. Nobers*,
    968 F.2d 401 (3d Cir. 1992)...................................................................................12, 16

*Aetna Health Inc. v. Davila*,
    542 U.S. 200 (2004).........................................................................................10, 11

*Alexander v. Sandoval*,
    532 U.S. 275 (2001)............................................................................................6, 7

*Am. Video Duplicating, Inc. v. City Nat'l Bank*,
    No. 2:20-CV-04036, 2020 WL 6882735 (C.D. Cal. Nov. 20, 2020) ........................8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................................4

*Atl. Shore Surgical Assocs. v. Horizon Blue Cross Blue Shield of N.J.*,
    No. 17-cv-07534 (FLW) (DEA), 2018 U.S. Dist. LEXIS 90734 (D.N.J. May
    31, 2018) ...........................................................................................................11, 15

*Baer v. Chase*,
    392 F.3d 609 (3d Cir. 2004)............................................................................18, 20

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................................4

*Benak v. Alliance Capital Mgmt. L.P.*, 435 F.3d 396 (3d Cir. 2006) .............................1

*Broad St. Surgical Ctr., LLC v. United Health Grp., Inc.*,
    Civil No. 11-2775 (JBS/JS), 2012 U.S. Dist. LEXIS 30466 (D.N.J. Mar. 6,
    2012) ....................................................................................................................19

*Canadian Nat'l Ry. v. Vertis, Inc.*,
    811 F. Supp. 2d 1028 (D.N.J. 2011) ...................................................................17

*Cohen v. Horizon Blue Cross Blue Shield of New Jersey*,
    No. CV154525, 2015 U.S. Dist. LEXIS 140344, 2015 WL 6082299 (D.N.J.
    Oct. 15, 2015) .....................................................................................................11

*Connelly v. Lane Constr. Corp.*,
    809 F.3d 780 (3d Cir. 2016)..................................................................................4

*Ctr. for Special Procs. v. Conn. Gen. Life Ins. Co.*,
    Civil Action No. 09-6566 (MLC), 2010 U.S. Dist. LEXIS 128289 (D.N.J.
    Dec. 6, 2010)............................................................................................................19

*Danna v. Expeditive, LLC*,
    Civil Action No. 16-34 (JBS/JS), 2017 U.S. Dist. LEXIS 750 (D.N.J. Jan 4.,
    2017) ........................................................................................................................20

*Doe v. Princeton Univ.*,
    790 F. App'x 379 (3d Cir. 2019) ............................................................................23

*Estate of Patterson v. City of Pittsburgh*, Civil Action No. 11-1021, 2011 U.S.
    Dist. LEXIS 118344 (W.D. Pa. 2011) ......................................................................1

*E. Orange Bd. of Educ. v. N.J. Sch. Constr. Corp.*,
    963 A.2d 865 (N.J. Sup. Ct. App. Div. 2009)..................................................22, 23

*Frederico v. Home Depot*,
    507 F.3d 188 (3d Cir. 2007)....................................................................................17

*Gonzaga Univ. v. Doe*,
    536 U.S. 273 (2002)..................................................................................................6

*Haghighi v. Horizon Blue Cross Blue Shield of N.J.*,
    No. 19-20483 (FLW), 2020 U.S. Dist. LEXIS 157246 (D.N.J. Aug. 31, 2020) ....23

*Ingersoll-Rand Co. v. McClendon*,
    498 U.S. 133 (1990)................................................................................................12

*Iwanicki v. Bay State Milling Co.*,
    No. 11-01792 (CCC), 2011 U.S. Dist. LEXIS 140944 (D.N.J. Dec. 7, 2011) .......21

*Johnson v. JPMorgan Chase Bank, N.A.*,
    488 F. Supp. 3d 144 (S.D.N.Y. 2020)......................................................................6

*Kenny v. Onward Search*,
    Civil Action No. 15-0456 (JLL) (JAD), 2015 U.S. Dist. LEXIS 49929 (D.N.J.
    Apr. 15, 2015)..........................................................................................................20

*Kofler v. Sayde Steeves Cleaning Serv., Inc.*,
    No. 8:20-CV-1460-T-33AEP, 2020 WL 5016902 (M.D. Fla. Aug. 25, 2020) ........7

*Kollman v. Hewitt Assocs., LLC*,
    487 F.3d 139 (3d Cir. 2007)....................................................................................13

*Malecki v. Christopher*,
    No. 4:CV-07-1829, 2008 WL 11496499 (M.D. Pa. Mar. 20, 2008) .........................7

*Mass. Mut. Life Ins. Co. v. Russell*,
    473 U.S. 134 (1985)........................................................................................10

*Masterson Pers., Inc. v. McClatchy Co.*,
    Civ. No. 05-1274, 2005 WL 3132349 (D. Minn. Nov. 22, 2005) ...........................................25

*Matava v. CTPPS, LLC*,
    No. 3:20-CV-01709, 2020 WL 6784263 (D. Conn. Nov. 18, 2020)...................................6, 8

*Medwell, LLC v. Cigna Corp.*,
    Civ. No. 20-10627 (KM) (ESK), 2021 U.S. Dist. LEXIS 96292 (D.N.J. May
    19, 2021) .......................................................................................................16, 19

*Menkes v. Prudential Ins. Co. of Am.*,
    762 F.3d 285 (3d Cir. 2014)........................................................................................12

*MHA, LLC v. Amerigroup Corp.*,
    Civ. No. 18-16042 (KM) (JSA), 2021 U.S. Dist. LEXIS 94147 (D.N.J. May
    17, 2021) .......................................................................................................2, 9, 23

*MZL Cap. Holdings, Inc. v. TD Bank, N.A.*,
    Civil No. 14-5772, 2016 U.S. Dist. LEXIS 103177 (D.N.J. Aug. 5, 2016) ....................21, 22

*N. Jersey Brain & Spine Ctr. v. CIGNA Healthcare of N.J.*,
    No. 09-2630, 2010 U.S. Dist. LEXIS 152435 (D.N.J. Jan. 12, 2010)...................................13

*N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
    514 U.S. 645 (1995)........................................................................................12

*Nat'l Sec. Sys., Inc. v. Iola*,
    700 F.3d 65 (3d Cir. 2012)........................................................................................12, 13

*Noble v. Samsung Elecs. Am., Inc.*,
    682 F. App'x 113 (3d Cir. 2017) ...............................................................................20

*Noye v. Hoffmann-La Roche, Inc.*,
    570 A.2d 12 (App. Div. 1990) ...............................................................................21

*In re Penn Cent. Transp. Co.*,
    831 F.2d 1221 (3d Cir. 1987)........................................................................................17

*In re Pennsylvania*,
    No. 13-CV-1871, 2013 WL 4193960 (E.D. Pa. Aug. 15, 2013) .............................................7

*Pilot Life Ins. Co. v. Dedeaux*,
    481 U.S. 41 (1987)........................................................................................10

*Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*,
    967 F.3d 218 (3d Cir. 2020)......................................................................... *passim*

*Prof'l Orthopedic Associates, PA v. Excellus Blue Cross Blue Shield*,
　No. 14-6950, 2015 U.S. Dist. LEXIS 91815, 2015 WL 4387981 (D.N.J. July
　15, 2015) ................................................................................................................11

*Profiles, Inc. v. Bank of Am. Corp.*,
　453 F. Supp. 3d 742 (D. Md. 2020) ...............................................................6, 8

*Schweikert v. Baxter Healthcare Corp.*,
　No. 12-5876, 2015 U.S. Dist. LEXIS 98627 (D.N.J. July 29, 2015)....................22

*Shehan v. U.S. Dep't of Just.*,
　No. 1:20-CV-00500, 2020 WL 7711635 (S.D. Ohio Dec. 29, 2020).......................8

*Sleep Tight Diagnostic Ctr., L.L.C. v. Aetna Inc.*,
　399 F. Supp. 3d 241 (D.N.J. 2019) .....................................................................15

*Small v. Oxford Health Ins., Inc.*,
　No. 18-13120 (JLL), 2019 U.S. Dist. LEXIS 27878 (D.N.J. Feb. 21, 2019) ...........4

*Somerset Orthopedic Assocs., P.A. v. Aetna, Inc.*,
　Civ. No. 19-12544, 2019 U.S. Dist. LEXIS 185160 (D.N.J. Oct. 21, 2019)............21

*Thieme v. Aucoin-Thieme*,
　151 A.3d 545 (N.J. 2016)..................................................................................17

*Transamerica Mortg. Advisors, Inc. v. Lewis*,
　444 U.S. 11 (1979)............................................................................................7

*United States v. Bestfoods*,
　524 U.S. 51 (1998)...........................................................................................25

*Univ. Spine Ctr. v. Aetna, Inc.*,
　774 F. App'x 60 (3d Cir. 2019) .........................................................................10

*Wisniewski v. Rodale, Inc.*,
　510 F.3d 294 (3d Cir. 2007)................................................................................7

*Woodlands Cmty. Ass'n, Inc. v. Mitchell*,
　162 A.3d 306 (N.J. Super. Ct. App. Div. 2017)......................................................16

*Zhejiang Rongyao Chem. Co., Ltd. v. Pfizer Inc.*,
　No. 11-5744 (PGS), 2012 U.S. Dist. LEXIS 137136 (D.N.J. Sept. 21, 2012) .........23

**Statutes**

29 U.S.C. § 216...................................................................................................7

29 U.S.C. § 1132.................................................................................................10

29 U.S.C. § 1144(a) .......................................................................................11, 14

29 U.S.C. § 1144(c)(1)................................................................................................11

CARES Act........................................................................................................ *passim*

ERISA................................................................................................................ *passim*

FFCRA............................................................................................................... *passim*

HCAPPA............................................................................................................ *passim*

HINT Act........................................................................................................... *passim*

N.J. Stat. Ann. § 17B:26-9.1.................................................................................8, 9, 23

N.J. Stat. Ann. § 17B:27-44.2....................................................................................23

N.J. Stat. Ann. § 56:8-109.........................................................................................15

## PRELIMINARY STATEMENT

Like much of the rest of the healthcare industry, Defendants United HealthCare Services, Inc. and Oxford Health Plans, Inc. (collectively, "United")[1] have worked relentlessly to provide care and services during a global health crisis unprecedented in scale. At its core, the Complaint tells the tale of how Genesis Laboratory Management, LLC ("Genesis") capitalized on that crisis by doubling the price of COVID-19 diagnostic tests at its height—unilaterally setting its charge for COVID-19 tests to more than five times what Medicare paid for the same test. By comparison, Quest Diagnostics—one of the largest clinical laboratory testing companies in the country—charges only $128.30, an amount almost identical to the Medicare rate.[2]

Genesis's brazenness even caught the eye of the *New York Times*, which ran an article exposing the lab's practices entitled "Two Friends in Texas Were Tested For Coronavirus. One Bill Was For $199. The Other? $6,408."[3] While Genesis attempts to argue that Congress somehow permitted its extravagant charges under the Families First Coronavirus Response Act ("FFCRA") and the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, it could not be more wrong. Not only is there no private right of action under those statutes, but nothing in them requires United to resign itself to price-gouging of critical health care services during a

---

[1] UnitedHealth Group Incorporated ("UHG") is named as a defendant solely because, according to the Complaint, it owns its co-defendants and is a profitable corporation. *See* Compl. ¶¶ 2–4, 9. That is insufficient, and UHG should be dismissed from this lawsuit for the reasons set forth in Section IV. below.

[2] *See* https://www.questdiagnostics.com/home/Covid-19/Pricing/. The Court may take "judicial notice of the website as it constitutes a public record, which the Court may consider even at the motion to dismiss stage." *Estate of Patterson v. City of Pittsburgh*, Civil Action No. 11-1021, 2011 U.S. Dist. LEXIS 118344, at *3 n.2 (W.D. Pa. 2011) (citations omitted).

[3] The Court may take judicial notice of news articles where their "publication is 'not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned.'" *Benak v. Alliance Capital Mgmt. L.P.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006) (quoting Fed. R. Evid. 201(b)(2)).

national health emergency by opportunistic providers, let alone a provider that is suspected of improper billing practices.

Even taking the facts Genesis alleges as true for purposes of this motion, the Complaint wholly fails to state a claim for relief against United.  Whatever Genesis's complaints about United's reimbursement process may be, Genesis is not the arbiter of compliance with the FFCRA and the CARES Act's provisions—Congress expressly delegated that responsibility to the Secretaries of Health and Human Services, the Labor Department, and the Department of the Treasury, so neither statute creates a private right of action.  Nor does the New Jersey Healthcare Information Networks and Technologies ("HINT") Act or the Health Claims Authorization, Processing and Payment Act ("HCAPPA"), whose "detailed and specific arbitration mechanism . . . firmly establishes that a private right of action is unnecessary to accomplish the statute[s'] purposes." *MHA, LLC v. Amerigroup Corp.*, Civ. No. 18-16042 (KM) (JSA), 2021 U.S. Dist. LEXIS 94147, at *15–16 (D.N.J. May 17, 2021).  The remainder of Genesis's state law claims fail for other independent reasons: (1) they are preempted by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"); (2) Genesis lacks standing to sue under ERISA for its failure to allege a valid assignment of benefits; and (3) they fail to state a claim for relief against United.

The Complaint should be dismissed in its entirety.

## FACTUAL BACKGROUND

Genesis is a molecular diagnostic and anatomic pathology laboratory offering various testing services.  *See* Compl. ¶ 13.  United issues and administers insurance contracts and health benefit plans, including to insureds, plan members, and beneficiaries.  *See id.* ¶ 15.  Genesis is a non-participating—or out-of-network—provider of services in that it does not have a contract with United for the services provided to United members or beneficiaries.  *See id.* ¶ 16.

According to the Complaint, from the start of the COVID-19 pandemic, Genesis has offered COVID-19 in vitro diagnostic testing for the detection of the virus that causes COVID-19. *See id.* ¶ 17.  Genesis also later offered COVID-19 antibody testing.  *See id.*  Genesis alleges that, in total, from the start of the pandemic through the present, it has provided COVID-19-related testing services to over 51,000 patients who are members or beneficiaries of United's health plan. *See id.*  United paid the majority of claims for COVID-19 diagnostic testing and related testing that Genesis submitted for payment at the outset of the pandemic in March, April, and May 2020. *See id.* ¶ 33.  At first, Genesis charged $256.65 for the COVID-19 tests it offered to United's members.  *Id.* ¶ 26.  Genesis acknowledges that United paid those charges, even though they amounted to more than five times what Medicare charged for the very same test.  *See id.* ¶¶ 26, 33.  In mid-April 2020, with the pandemic raging, Genesis admits it unilaterally doubled its price for those tests to $513.00.  *Id.* ¶ 26.  Then, the *New York Times* exposé appeared two months later, shining a light on Genesis's pricing scheme and heightening concerns that it was improperly billing United for unnecessary services.  Around that time, United began sending requests for Genesis to provide information regarding the tests it allegedly performed beginning in March 2020 in an effort to confirm whether those services were in fact rendered.  *See* ¶¶ 33-34.

Genesis takes umbrage at having to provide the requested information to United based on United's justifiable suspicion about the veracity of Genesis's claim submissions, alleging that "United has denied payment for a series of claims and is refusing to pay unless Genesis produces clinical and operational documentation within 30 days of United's request."  *Id.* ¶ 35.  Genesis seeks payment from United for these claims—demanding an amount in excess of $20 million,[4] reflecting a cash price that it unilaterally doubled to five times the Medicare rate—even though it

---

[4] *See* Ex. A to Compl.

3

has refused to provide the requested documentation confirming that it actually rendered the services for which it demands payment.  *See id.* ¶ 11.  It also seeks payment for certain other, non-COVID related claims for which it has failed to provide information to United.  *Id.* ¶ 12.

**LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must "raise a right to relief above the speculative level," and a formulaic recitation of the elements of a cause of action, labels, and mere legal conclusions will not suffice to state a valid claim for relief. *Twombly*, 550 U.S. at 558. Rather, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

To determine the sufficiency of a complaint under *Twombly* and *Iqbal* in the Third Circuit, the Court must: (1) "tak[e]  note of the elements [the] plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Constr. Corp*., 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted); *see also Small v. Oxford Health Ins., Inc*., No. 18-13120 (JLL), 2019 U.S. Dist. LEXIS 27878, at *5-6 (D.N.J. Feb. 21, 2019).

# ARGUMENT

## I.     COUNT I AND COUNT VI FAIL AS A MATTER OF LAW BECAUSE THERE IS NO PRIVATE RIGHT OF ACTION UNDER THE FFCRA, THE CARES ACT, THE HINT ACT, OR HCAPPA

Counts I and VI fail at the threshold because, despite Genesis's attempts to invoke the FFCRA, the CARES Act, the HINT Act, and HCAPPA to justify charging exorbitant rates for critical health care services during a pandemic, it has no private right of action under those statutes.

### A.     There Is No Private Right Of Action Under The FFCRA Or The CARES Act.

Congress enacted the FFCRA, a broad-ranging piece of legislation designed to provide varying forms of immediate relief to Americans during the COVID-19 pandemic, on March 18, 2020. Section 6001(a) of the FFCRA provides that a health insurer shall provide coverage for in-vitro diagnostic products and services relating to the diagnosis of COVID-19. *See* FFCRA, Pub. L. 116-127. Relatedly, Section 3202(a) of the CARES Act provides that "a group health plan or a health insurance issuer providing coverage of items and services" described in Section 6001(a) of the FFCRA shall reimburse the provider of the diagnostic testing in the following manner:

> (2) If the health plan or issuer does not have a negotiated rate with such provider [of the diagnostic testing], such plan or issuer shall reimburse the provider in an amount that equals the cash price for such service as listed by the provider on a public internet website, or such plan or issuer may negotiate a rate with such provider for less than such cash price.

CARES Act, Pub. L. 116-136. Critically, and fatal to Genesis's Count I here, neither the FFCRA nor the CARES Act creates a private right of action. Instead, Congress entrusted enforcement responsibility to impartial federal agencies, not to providers like Genesis that may be tempted to invoke those statutes as cover for their desire to profit improperly from a national health emergency.

### 1.    No express private right of action.

"[P]rivate rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).  The Complaint fails to identify language supporting a private enforcement right under either statute for healthcare providers like Genesis because there isn't any.  Indeed, Section 6002 of the FFCRA explicitly states that "the provisions of subsection (a) shall be applied by the Secretary of Health and Human Services, Secretary of Labor, and Secretary of the Treasury[.]"  FFCRA, Pub. L. 116-127.  The only enforcement provision relating to this aspect of the CARES Act is located in Section 3202(b).  It states that the Secretary of Health and Human Services may impose a civil monetary penalty on any *provider* who fails to post the cash price for SARS-CoV-2 testing on its public website.  *See* CARES Act, Pub. L. 116-136.

Courts across the country have uniformly dismissed attempts to assert a non-existent private cause of action based on the CARES Act.  *See, e.g.*, *Matava v. CTPPS, LLC*, No. 3:20-CV-01709, 2020 WL 6784263, at *1 (D. Conn. Nov. 18, 2020) (CARES Act does not expressly provide a private right of action to enforce its provisions and the court will not imply one); *Johnson v. JPMorgan Chase Bank, N.A.*, 488 F. Supp. 3d 144, 157 (S.D.N.Y. 2020) (CARES Act does not contain an express cause of action to enforce the Payroll Protection Program loan program); *Profiles, Inc. v. Bank of Am. Corp.*, 453 F. Supp. 3d 742, 748 (D. Md. 2020) (stating that "the CARES Act does not expressly provide a private right of action").  This Court should reach the same result here.

### 2.    No implied private right of action.

A court may not infer a private right of action "unless Congress speak[s] with a clear voice, and manifests an unambiguous intent to confer individual rights[.]"  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 280 (2002) (quotation marks omitted).  If Congress is silent or ambiguous, courts may not find a cause of action "no matter how desirable that might be as a policy matter."  *Sandoval*,

532 U.S. at 286–87.  An implied private right of action is nonexistent under the FFCRA and the CARES Act for multiple reasons.

First, the FFCRA and the CARES Act's delegation of enforcement authority to various federal agencies underscores the absence of an implied right of action.  As the Supreme Court has determined, "[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Sandoval*, 532 U.S. at 290.  And where, as here, Congress explicitly delegates enforcement authority to a federal agency, there is "a strong presumption against implied private rights of action . . . ." *Wisniewski v. Rodale, Inc.*, 510 F.3d 294, 305 (3d Cir. 2007).[5]  The Complaint makes no effort to overcome that presumption.

Second, weighing against finding an implied right of action under the FFCRA with regard to coverage of testing for COVID-19 is the statute's express grant of a private right of action against unlawful termination under the Fair Labor Standards Act.[6]  It is axiomatic that "when Congress wishe[s] to provide a private damages remedy, it kn[ows] how to do so and d[oes] so expressly."  *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 21 (1979) (invoking

---

[5] *See also In re Pennsylvania*, No. 13-CV-1871, 2013 WL 4193960, at *13 (E.D. Pa. Aug. 15, 2013) ("[W]hen a statute explicitly delegates authority to a federal agency to enforce its law, there is a 'strong presumption against implied private rights of action.'"); *Malecki v. Christopher*, No. 4:CV-07-1829, 2008 WL 11496499, at *9 (M.D. Pa. Mar. 20, 2008) ("The sole reference to enforcement of [statutory provision] by the United States Attorney General, along with the absence of other enforcement provisions, creates a presumption that Attorney General's enforcement of this statute is exclusive.").

[6] *See, e.g.,* FFCRA, Pub. L. 116-127, at § 5105(b)(2) ("An employer who willfully violates section 5104 shall . . . be subject to the penalties described in sections 16 and 17 of [the Fair Labor Standards Act] (29 U.S.C. §§ 216; 217) with respect to such violation."); 29 U.S.C. § 216 ("An action to recover the liability prescribed in the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."); *Kofler v. Sayde Steeves Cleaning Serv., Inc.*, No. 8:20-CV-1460-T-33AEP, 2020 WL 5016902, at *2 (M.D. Fla. Aug. 25, 2020).

*expressio unius* doctrine to deny implied private right of action under section 206 of the Investment Advisors Act of 1940).

Finally, honoring Congress's intent, courts across the country have uniformly declined to find an implied right of action under the CARES Act. *See, e.g., Am. Video Duplicating, Inc. v. City Nat'l Bank*, No. 2:20-CV-04036, 2020 WL 6882735, at *5 (C.D. Cal. Nov. 20, 2020) ("Unsurprisingly, every court to address whether the CARES Act created an implied private right of action has held that it does not."); *Profiles, Inc.*, 453 F. Supp. 3d at 751 (the court was "not persuaded that the language of the CARES Act evidences the requisite congressional intent to create a private right of action," noting that "an expansive approach to implied rights of action 'cannot be squared with the doctrine of the separation of powers'"); *Matava*, 2020 WL 6784263, at *1 (after finding the CARES Act does not expressly provide a private right of action, the court concluded that the complaint did not set forth "sufficient (or any) analysis as to why . . . the [c]ourt should find an implied private right of action"); *Shehan v. U.S. Dep't of Just.*, No. 1:20-CV-00500, 2020 WL 7711635, at *11 (S.D. Ohio Dec. 29, 2020) ("[T]his Court is aware of no decision finding that the CARES Act creates any implied private right of action.").

There is no private right of action under the FFCRA or the CARES Act. As a result, Count I of the Complaint fails and should be dismissed.

**B.     There Is No Private Right Of Action Under The HINT Act Or HCAPPA.**

Count VI similarly fails because neither the HINT Act nor HCAPPA creates a private right of action. New Jersey's HINT Act "establishes timetables for health insurers to pay healthcare providers and imposes interest rates for late payments." *MHA, LLC*, 2021 U.S. Dist. LEXIS 94147, at *12 (citing N.J. Stat. Ann. § 17B:26-9.1). In 2006, the New Jersey Legislature amended the HINT Act when it enacted HCAPPA. In particular, "HCAPPA amended the HINT Act's prompt-payment provision to provide that (1) insurers must establish an internal appeals process

to resolve disputes with providers, (2) if an appeal is resolved in favor of the provider, the insurer must pay the provider with interest, (3) if an appeal is resolved in favor of the insurer, the provider may seek arbitration, (4) the arbitrator can order the insurer to make payment with interest, and (5) the arbitrator's decision is binding and final." *Id.* at *15 (citing HCAPPA § 13, codified at N.J. Stat. Ann. § 17B:26-9.1(e)(1)).

In determining whether the HINT Act, as amended by HCAPPA, provides for a private right of action, Judge McNulty recently concluded that "HCAPPA is dispositive in the private-right-of-action analysis . . . [because] the Legislature's creation of a detailed and specific arbitration mechanism clarifies its intention that disputes be resolved by arbitration, not litigation, and firmly establishes that a private right of action is unnecessary to accomplish the statute's purposes." *Id.* at *15-16.  In *MHA*, the Court "decline[d] to imply a private right of action to seek damages under the HINT Act," and granted the insurer's motion to dismiss that claim.  *Id.* at *18. This Court should do the same here.

## II.   COUNTS II THROUGH VI FAIL BECAUSE THEY ARE PREEMPTED BY ERISA

### A.   Relief To Genesis Must Come, If At All, Through ERISA's Exclusive Enforcement Scheme.

The Complaint also fails because Genesis cannot sidestep ERISA's exclusive enforcement scheme by invoking various federal statutes and state law claims.  The Supreme Court has held time and again that ERISA's "carefully integrated civil enforcement provisions," *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985), "were intended to be exclusive," *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987).  Although Genesis attempts to assert various state law claims against United, these claims fail because its exclusive remedy—were one to exist at all—must be brought under ERISA.  Indeed, and as discussed in further detail below, Genesis's claims, though couched in terms of contract, are aimed at recovering ERISA-governed benefits (*i.e.*, reimbursement from an ERISA plan) and must be brought through ERISA's exclusive remedial

10

scheme set forth at 29 U.S.C. § 1132.[7]  *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004) ("[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted.").

It is well-settled that a healthcare provider, like Genesis, has standing to file suit under ERISA if it has obtained a valid assignment of benefits.  *See, e.g., Univ. Spine Ctr. v. Aetna, Inc.*, 774 F. App'x 60, 65 (3d Cir. 2019) ("A healthcare provider is neither a 'participant' nor a 'beneficiary' for purposes of ERISA, but it may acquire standing to file suit under 29 U.S.C. § 1132(a)(1)(B) if it obtains 'a valid assignment of benefits by a plan participant or beneficiary.'") (quoting *Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 449 (3d Cir. 2018)).  Of course, Genesis does not assert any claims under ERISA, and it is silent about any such assignments in the Complaint.  But the law does not permit Genesis to make an end run around ERISA's comprehensive enforcement scheme by turning a blind eye to its existence, and it cannot avoid ERISA preemption by artful pleading:

> Plaintiff pleads no facts to establish that a valid assignment occurred. Thus, Plaintiff cannot bring any ERISA claims for reimbursement, as it lacks standing to do so.  *See Cohen v. Horizon Blue Cross Blue Shield of New Jersey*, No. CV154525, 2015 U.S. Dist. LEXIS 140344, 2015 WL 6082299, at *3 (D.N.J. Oct. 15, 2015) (dismissing complaint at motion to dismiss stage in absence of allegations of assignment in the complaint); *see also Prof'l Orthopedic Associates, PA v. Excellus Blue Cross Blue Shield*, No. 14-6950, 2015 U.S. Dist. LEXIS 91815, 2015 WL 4387981, at *5 (D.N.J. July 15, 2015) (same). In that regard, since it appears to have intentionally elected not to assert an assignment of benefits, Plaintiff will also not be given leave to file an amended complaint.

---

[7] United notes that, inasmuch as the relief Genesis seeks involves claims that are associated with non-ERISA plans, Genesis still fails to state a claim for relief against United for the reasons outlined in Sections I. and III.

*Atl. Shore Surgical Assocs. v. Horizon Blue Cross Blue Shield of N.J.*, No. 17-cv-07534 (FLW)
(DEA), 2018 U.S. Dist. LEXIS 90734, at *20 (D.N.J. May 31, 2018).  This Court should dismiss
Counts II through VI accordingly.

      **B.**    **ERISA Broadly Preempts State Law Claims That "Relate To" An Employee
Benefit Plan Governed By ERISA.**

      "The purpose of ERISA is to provide a uniform regulatory regime over employee benefit

plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). To achieve that goal, ERISA

contains "expansive pre-emption provisions," which operate to maintain the regulation of benefit

plans in the federal domain.  *Id.* (citations omitted).  The ultimate objective of federal ERISA

preemption is to "eliminate the threat of conflicting and inconsistent State and local regulation."

*N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 657 (1995).

      ERISA's express preemption provision is set forth in ERISA § 514(a), which preempts

"any and all State laws insofar as they . . . relate to any employee benefit plan" covered under the

statute.  29 U.S.C. § 1144(a).  State laws "relate to" an ERISA plan for purposes of preemption if

the law either has a "reference to" or has a "connection with" the plan at issue.  *See Plastic Surgery

Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 241 (3d Cir. 2020); *Ingersoll-Rand Co. v.

McClendon*, 498 U.S. 133, 138 (1990).  "The scope of '[s]tate laws' that may 'relate to' a plan is

expansive, encompassing "all laws, decisions, rules, regulations, or other State action having the

effect of law, of any State."  *Plastic Surgery Ctr.*, 967 F.3d at 226 (citing 29 U.S.C. § 1144(c)(1)).

That includes state common law causes of action.  *Id.*; *see also Nat'l Sec. Sys., Inc. v. Iola*, 700

F.3d 65, 83-84 (3d Cir. 2012) ("State common law claims fall within this definition and, therefore,

are subject to ERISA preemption.").

      As to the first definition, a state law claim makes an impermissible "reference to" an ERISA

plan when (1) "the existence of an ERISA plan [is] a critical factor in establishing liability,"

*Ingersoll-Rand*, 498 U.S. at 139-40; or (2) the court's examination will "require interpreting the

plan's terms." *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 294 (3d Cir. 2014); *1975 Salaried Ret. Plan for Eligible Emps. of Crucible, Inc. v. Nobers*, 968 F.2d 401, 406 (3d Cir. 1992) (citations omitted). As to the second definition, the Third Circuit has explained that a state law claim has a "connection with" an insurance benefits plan when (1) the claim "directly affect[s] the relationship among the traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries," *see Plastic Surgery Ctr.*, 967 F.3d at 235 (citations omitted); (2) "interfere[s] with plan administration," *Menkes*, 762 F.3d at 295-96; or (3) "undercut[s] ERISA's stated purpose[,]" *Iola*, 700 F.3d at 84-85; *Kollman v. Hewitt Assocs., LLC*, 487 F.3d 139, 149 (3d Cir. 2007).

## C.   Genesis's Contract Claims (Counts II and III) And Estoppel Claim (Count V) Are Preempted.[8]

Genesis seeks reimbursement from United based on an alleged implied contract. Genesis's reliance on an alleged implied contract is not surprising, but nevertheless unfounded as a matter of law. Under *Plastic Surgery Center*, a medical provider can pursue a contract claim against an insurer and sidestep ERISA preemption if the provider alleges a separate, standalone agreement with the insurer. 967 F.3d at 231-233. As discussed in Section III.A below, Genesis falls far short of alleging the existence of a valid and enforceable implied contract with United, let alone an implied contract requiring United to pay for COVID-19 diagnostic tests at a price five times the amount Medicare paid.

Because Genesis fails to allege a separate, standalone contract with United, it must look to the terms of the ERISA-governed benefit plan as the basis for United's payment obligation.

---

[8] Genesis's Count VI, for violations of New Jersey's HINT Act and HCAPPA, is also preempted. *See, e.g., N. Jersey Brain & Spine Ctr. v. CIGNA Healthcare of N.J.*, No. 09-2630, 2010 U.S. Dist. LEXIS 152435, at *12 (D.N.J. Jan. 12, 2010) (denying motion to remand in part because the plaintiff's claim for violations of the HINT Act and HCAPPA were completely preempted), *report and recommendation adopted*, 2010 U.S. Dist. LEXIS 152436 (D.N.J. Mar. 5, 2010).

Indeed, Genesis's own allegations make clear that United's alleged payment obligation stems from its members' ERISA plan:

- "At issue in this dispute is United's failure to pay approximately 51,000 clean claims for COVID-19 diagnostic testing that Genesis provided and continues to provide *to United members and beneficiaries*.  In addition to failing to reimburse Genesis for providing *covered COVID testing services*, . . . .  Compl. ¶ 11 (emphasis added).

- "United is required to make benefit payments from its own assets (for fully insured plans) or the assets of the relevant plan (for self-funded plans) *when an individual covered by one of the plans obtains healthcare services covered by the plan*."  *Id.* ¶ 15 (emphasis added).

- "Genesis submits claims for reimbursement of the testing services to United, including COVID-19 diagnostic testing and related testing, *provided to United's members*."  *Id.* ¶ 16 (emphasis added).

- "Genesis had every expectation that United would honor its obligations and reimburse Genesis for the COVID-19-related testing services *provided to United's members and beneficiaries*."  *Id.* ¶ 20 (emphasis added).

- "Genesis has been, and continues to be, harmed by United's failure to pay valid claims that Genesis submitted to United for reimbursement *for services to United's members and beneficiaries*."  *Id.* (emphasis added).

This makes sense because, without the ERISA plan, there would be no relationship between United and its insureds.  In other words, the only reason Genesis can claim that United must pay for services provided to United's insureds is because they are *insured by United through their ERISA-governed plans*.  And United's obligation to pay for services provided to its insureds flows from its members' ERISA plans.  Accordingly, "the existence of [an ERISA] plan is a critical factor in establishing liability" for Genesis's claims, and the Court's examination of that issue will "require interpreting the plan's terms."  *Plastic Surgery Center*, 967 F.3d at 230.

Genesis's allegations stand in stark contrast to the provider's allegations in *Plastic Surgery Center*, illustrating precisely why the preemption doctrine applies here but did not there.  *Id.* at 241.  In *Plastic Surgery Center*, the provider alleged that the services it rendered to the patients were *not* covered under the patients' benefit plans.  *Id.* at 223-24.  For this reason, the provider

14

allegedly called Aetna before rendering services to secure an agreement from Aetna to pay for the services.  *Id.* at 224.  The provider alleged that, during these pre-service phone conversations with Aetna employees, the provider identified the precise services to be rendered, and Aetna expressly promised to reimburse the provider for those services at the "highest in-network level."  *Id.* at 232.

By contrast, Genesis alleges that it provided covered services to United's members.  *See, e.g.*, Compl. ¶ 11.  Thus, United's obligations are to comply with the terms of the applicable benefit plans to which the members belong.  Genesis has not sufficiently alleged a separate agreement or promise to pay, nor can it.  This fatal defect in Genesis's attempt to evade ERISA preemption can be resolved as a matter of law based on the pleadings.  Genesis's contract and promissory estoppel claims are preempted under ERISA § 514 and must be dismissed.  *See, e.g.*, *Sleep Tight Diagnostic Ctr., L.L.C. v. Aetna Inc.*, 399 F. Supp. 3d 241, 252 (D.N.J. 2019) (dismissing provider's contract, promissory estoppel, and negligent misrepresentation claims as preempted under ERISA § 514 where provider failed to allege a "separately executed agreement" with the insurer); *Atl. Shore Surgical Assocs.*, 2018 U.S. Dist. LEXIS 90734, at *15 (provider's state law claims, including breach of contract and promissory estoppel, were preempted by ERISA where provider failed to allege any separate agreement regarding a "reimbursement rate or any other provision dictating payment terms").

**D.    Genesis's Unjust Enrichment & Quantum Meruit Claims (Count IV) Are Preempted.**

That Genesis would claim that United has been unjustly enriched under these circumstances is ironic given the pricing-gouging scheme Genesis details in its own Complaint.[9] In any case, the Third Circuit's recent decision in *Plastic Surgery Center* confirms that Genesis's

---

[9] *See* N.J. Stat. Ann. § 56:8-109 (prohibiting the sale of merchandise, including services, at an "excessive price" (defined as more than 10 percent) during a declared state of emergency).

unjust enrichment and quantum meruit claims are preempted by ERISA.  967 F.3d at 230.  As an initial matter, a plaintiff asserting a claim for unjust enrichment must demonstrate that the defendant "received a benefit and that retention of that benefit without payment would be unjust."[10] *Id.* at 240 (citing *Thieme v. Aucoin-Thieme*, 151 A.3d 545, 557 (N.J. 2016)).  In *Plastic Surgery Center*, the Third Circuit held that "where a healthcare provider claims unjust enrichment against an insurer, the benefit conferred, if any, is not the provision of the healthcare services *per se*, but rather the discharge of the obligation the insurer owes to its insured." *Id.* at 240.  That obligation, the court explained, "is none other than the insurer's duty to its insured *under the terms of the ERISA plan*."  *Id.* at 241 (emphasis in original).  As a result, claims for unjust enrichment and quantum meruit in the provider-insurer context are preempted by ERISA because those claims are premised on the existence of an ERISA plan.  *See id.* at 240-41 (holding medical provider's unjust enrichment claim against insurer preempted by ERISA); *Medwell, LLC*, 2021 U.S. Dist. LEXIS 96292, at *21-23 (relying on *Plastic Surgery Center* and holding medical provider's unjust enrichment and quantum meruit claims against insurer preempted by ERISA).

Genesis's unjust enrichment and quantum meruit claims depend on its allegation that it conferred the benefit of discharging United's obligations to its insureds.  *See* Compl. ¶ 70.  Because those obligations arise under ERISA, Genesis's unjust enrichment and quantum meruit claims are preempted.  *Plastic Surgery Ctr.*, 967 F.3d at 240-21; *Medwell, LLC*, 2021 U.S. Dist. LEXIS 96292, at *21.  To be sure, while Genesis also claims that United "benefitted from the

---

[10] New Jersey courts treat unjust enrichment and quantum meruit as "parallel" and "generally have held that quantum meruit requires a benefit conferred, even if that benefit may take the form of services."  *Medwell, LLC*, 2021 U.S. Dist. LEXIS 96292, at *21-23 (finding medical provider's quantum meruit claim preempted by ERISA for the same reasons as its unjust enrichment claim); *see also Woodlands Cmty. Ass'n, Inc. v. Mitchell*, 162 A.3d 306, 310 (N.J. Super. Ct. App. Div. 2017) ("Without venturing into the differences between the two, suffice to say that '[r]ecovery under both of these doctrines requires a determination that defendant has benefitted from plaintiff's performance.'") (citation omitted).

insurance premiums from members and beneficiaries in exchange for out-of-network healthcare coverage," Compl. ¶ 70, this allegation cannot serve as a basis for Genesis's unjust enrichment or quantum meruit claims because Genesis did not confer that alleged benefit on United; the members and beneficiaries did.  *See Canadian Nat'l Ry. v. Vertis, Inc.*, 811 F. Supp. 2d 1028, 1034 (D.N.J. 2011) ("Under New Jersey law, a claim under the quasi-contractual theory of unjust enrichment has two essential elements: (1) that the ***defendant has received a benefit from the plaintiff***, and (2) that the retention of the benefit by the defendant is inequitable.") (emphasis added) (citation and internal quotation marks omitted); *see also Thieme*, 151 A.3d at 557 (stating that unjust enrichment "also 'requires that plaintiff show that it expected remuneration from the defendant ***at the time it performed or conferred a benefit on defendant*** and that the failure of remuneration enriched defendant beyond its contractual rights.'") (quoting *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526  (N.J. 1994)); Restatement (Third) of Restitution and Unjust Enrichment (2011), October 2020 Update (stating that the first element of an unjust-enrichment claim is "a benefit conferred on the defendant ***by the plaintiff***").

The Court should therefore dismiss Count IV as preempted by ERISA.

## III.   GENESIS FAILS TO STATE A CLAIM FOR BREACH OF IMPLIED CONTRACT (COUNT II), BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (COUNT III), PROMISSORY ESTOPPEL (COUNT V), AND VIOLATIONS OF NEW JERSEY HINT ACT & HCAPPA (COUNT VI)

### A.   Genesis Fails To State A Claim For Breach Of Implied Contract (Count II).

An implied contract "is a true contract arising from mutual agreement and intent to promise, but where the agreement and promise have not been verbally expressed."  *In re Penn Cent. Transp. Co.*, 831 F.2d 1221, 1228 (3d Cir. 1987).  Thus, the "elements necessary to form an implied-in-fact contract are identical to those required for an express agreement."  *Id.* (citation omitted).  The elements of a breach-of-contract claim are "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim

performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007) (citation omitted).

Like an express contract, an implied contract "arises from offer and acceptance, and must be sufficiently definite so that the performance to be rendered by each party can be ascertained with reasonable certainty." *Baer v. Chase*, 392 F.3d 609, 618-19 (3d Cir. 2004) (citation and internal quotation marks omitted). To that end, parties create an enforceable contract only "when they agree on its essential terms and manifest an intent that the terms bind them." *Id.* at 619. If the parties "do not agree on one or more essential terms of the purported agreement, courts generally hold it to be unenforceable." *Id.* Two terms that New Jersey courts consider essential for contract formation are duration and price. *See id.*

Genesis has failed to allege a valid and enforceable contract between the parties. To start, Genesis concedes it is not in United's network of providers and thus "does not have a contract with United to accept rates for the services provided to United members or beneficiaries . . . ." Compl. ¶ 16. Genesis also fails to identify a single statement, whether written or oral, that United ever made supporting the existence of a contract between the parties. For instance, Genesis does not allege any details whatsoever regarding what United agreed to pay Genesis, or for how long United agreed to pay Genesis. *See Baer*, 392 F.3d at 619 (stating that price and duration are essential terms that must be sufficiently definitive for a contract to exist).

Instead, Genesis relies on a mere three months' "course of conduct" as the basis for its purported implied contract. *See* Compl. ¶¶ 53-56. In particular, Genesis alleges that "United has paid the majority of claims for COVID-19 diagnostic testing and related testing that Genesis submitted for testing provided at the outset of the pandemic in March, April, and May 2020." *Id.* ¶ 33. Genesis does not allege anything else about the parties' relationship. Remarkably, Genesis does not even allege that its prices during those three months remained constant; instead, it

concedes that it **doubled** the price of its COVID-19 diagnostic test in mid-April 2020.  *See id.* ¶¶ 26-27 (alleging that Genesis's cash price for its COVID-19 diagnostic test "was $256.65 until mid-April, when it was updated to $513.00").  And of course, Genesis does not allege any facts whatsoever about the duration of the parties' purported agreement.  These allegations do not come close to plausibly alleging the existence of an implied contract.  *See Broad St. Surgical Ctr., LLC v. United Health Grp., Inc.*, Civil No. 11-2775 (JBS/JS), 2012 U.S. Dist. LEXIS 30466, at *27 (D.N.J. Mar. 6, 2012) (dismissing medical provider's claim for breach of implied contract, based on insurer's history of paying the provider, because the provider failed to set forth any facts that would allow the court to discern the terms of the insurer's alleged promise to pay); *Ctr. for Special Procs. v. Conn. Gen. Life Ins. Co.*, Civil Action No. 09-6566 (MLC), 2010 U.S. Dist. LEXIS 128289, at *17-18 (D.N.J. Dec. 6, 2010) (same); *but see Medwell, LLC*, 2021 U.S. Dist. LEXIS 96292, at *8 (finding that a provider pleaded an implied contract because its "allegations that [the provider] had a regular billing relationship with [the insurer] lasting fifteen years, coupled with a pattern of preauthorization, takes the Amended Complaint beyond merely claiming that an implied contract arose from the course of conduct") (citation, internal quotation marks omitted, and bracket).

In light of these obvious deficiencies, Genesis attempts to bolster its contract allegations through reference to the FFCRA and the CARES Act, alleging that certain provisions of those federal statutes (and FAQs issued by the Department of Health and Human Services) not only permitted its profiteering, but also were somehow incorporated by reference into the parties' purported agreement.  *See* Compl. ¶ 56 (alleging that the "parties' contract indicated that United would pay Genesis the statutorily defined value of Genesis's services (as provided by the FFCRA and the Cares Act) for the COVID testing services provided by Genesis").  Genesis does not allege, however, that United ever mentioned the FFCRA or the CARES Act during the three months it

paid for services or at any other time.  Instead, Genesis alleges that those statutes required United either to pay whatever price Genesis posted on its website—price-gouging notwithstanding—or to negotiate a rate with Genesis.  *See id.* ¶¶ 24-27.  And, according to Genesis, because United "did not make any effort to negotiate a rate with Genesis," it "is obligated to reimburse Genesis for COVID-19 testing services" at the exorbitant rates posted on Genesis's website.  *Id.* ¶ 27.  But Genesis does not explain how it may look to the CARES Act and the FFCRA to determine such fluctuating and indefinite price terms without any indication from United that it may do so.  Put simply, Genesis's attempt to unilaterally incorporate by reference the CARES Act and the FFCRA is wholly unsupported, conclusory, and inconsistent with the fundamental contract principle that "the parties have an understanding of the terms to which they have agreed."  *Noble v. Samsung Elecs. Am., Inc.*, 682 F. App'x 113, 116 (3d Cir. 2017).

To be sure, Genesis's reliance on the CARES Act and the FFCRA to establish price terms does nothing to cure its failure to allege duration terms.  Under New Jersey law, "the duration of the contract is deemed an essential term and therefore any agreement must be sufficiently definitive to allow a court to determine the agreed upon length of the contractual relationship."  *Baer*, 392 F.3d at 619.  Genesis's Complaint does not contain a single allegation about the duration of its purported agreement with United.   In fact, Genesis appears to allege that the agreement is continuing.  *See* Compl. ¶ 18 (alleging that Genesis "provided COVID-19-related testing services to over 51,000 patients who are members or beneficiaries of Defendants' health plans" and that "[t]his number continues to grow").  Genesis's failure to allege duration is fatal to its claim for breach of implied contract.  *See, e.g.*, *Danna v. Expeditive, LLC*, Civil Action No. 16-34 (JBS/JS), 2017 U.S. Dist. LEXIS 750, at *3-4 (D.N.J. Jan 4., 2017) (finding no binding settlement agreement existed because the parties "never set the time for performance of the settlement agreement"); *Kenny v. Onward Search*, Civil Action No. 15-0456 (JLL) (JAD), 2015 U.S. Dist. LEXIS 49929,

at *6-7 (D.N.J. Apr. 15, 2015) (granting motion to dismiss claim for breach of implied contract where plaintiff failed to allege duration and other essential terms of the contract)

Genesis attempts to plead an implied contract as the source of United's payment obligation because it cannot rely on the ERISA plan itself; otherwise, its claim would be preempted.  But Genesis's allegations do not give rise to a valid and enforceable contract with United.  If they did, that would mean that every insurer who paid any medical provider for services contemplated under the CARES Act, for a period as short as three months, entered into a binding contract with that provider, requiring it to negotiate with the provider or pay any price the provider designated, for an indefinite period of time.  That result is as absurd as it sounds.  The Court should dismiss Count II.

> **B.** **Genesis Fails To State A Claim For Breach Of The Covenant Of Good Faith And Fair Dealing (Count III).**

Genesis's claim for breach of the covenant of good faith and fair dealing fails because Genesis does not allege the existence of a valid contract.  *See Iwanicki v. Bay State Milling Co.*, No. 11-01792 (CCC), 2011 U.S. Dist. LEXIS 140944, at *9-10 (D.N.J. Dec. 7, 2011) ("The parties must have a valid contract in order for there to be a breach of an implied covenant of good faith and fair dealing."); *Noye v. Hoffmann-La Roche, Inc.*, 570 A.2d 12, 14 (App. Div. 1990) ("In the absence of a contract, there can be no breach of an implied covenant of good faith and fair dealing.").  Because no implied covenant of good faith and fair dealing exists without a valid contract, Genesis cannot state a claim for breach of such a covenant.

Even if Genesis alleged a valid contract, its claim for breach of the covenant of good faith and fair dealing fails because it is duplicative of its breach-of-contract claim.  *See, e.g.*, *Somerset Orthopedic Assocs., P.A. v. Aetna, Inc.*, Civ. No. 19-12544, 2019 U.S. Dist. LEXIS 185160, at *27-28 (D.N.J. Oct. 21, 2019) ("[A] breach of the covenant of good faith and fair dealing must not arise out of the same conduct underlying an alleged breach of a literal term of the contract."); *MZL*

*Cap. Holdings, Inc. v. TD Bank, N.A.*, Civil No. 14-5772 (RMB/AMD), 2016 U.S. Dist. LEXIS 103177, at *30 (D.N.J. Aug. 5, 2016) ("[Where] a claim for breach of the implied covenant of good faith and fair dealing is premised upon the same conduct as a breach of contract claim, the [implied-covenant] claim cannot stand and must be dismissed as duplicative or redundant."). Genesis's implied-covenant claim is duplicative of its breach-of-contract claim because both claims focus on the exact same conduct: United's alleged failure to pay for COVID-19 testing services.  Critically, Genesis does not allege that United "has acted consistent with the contract's literal terms," as it must to state a claim for breach of the implied covenant of good faith and fair dealing.  *See MZL Cap. Holdings, Inc.*, 2016 U.S. Dist. LEXIS 103177, at 29-30 ("The breach of the implied covenant arises when the other party has ***acted consistent with the contract's literal terms***, but has done so in such a manner so as to 'have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'") (emphasis in original) (citations omitted). Rather, Genesis alleges that United "acted in bad faith by erecting hurdles to payment without justification," Compl. ¶ 11, and "withheld payment for COVID-19 testing services in bad faith," *id.* at 12.  These allegations go to United's alleged failure to pay and thus are duplicative of the allegations supporting Genesis's breach-of-contract claim.

Genesis fails to state a claim for breach of the covenant of good faith and fair dealing irrespective of whether it alleges a valid contract.  The Court should therefore dismiss Count III.

**C.      Genesis Fails To State A Claim For Promissory Estoppel (Count V).**

To state a claim for promissory estoppel, a plaintiff must allege (1) "a clear and definite promise"; (2) "made with the expectation that the promisee will rely upon it"; (3) "reasonable reliance upon the promise"; and (4) that the promisee's reliance on the promise resulted "in definite and substantial detriment."  *E. Orange Bd. of Educ. v. N.J. Sch. Constr. Corp.*, 963 A.2d 865, 875 (N.J. Sup. Ct. App. Div. 2009).

Genesis's promissory estoppel claim fails because it has not alleged any promise—let alone "a clear and definite" one—that United made to Genesis. *See Schweikert v. Baxter Healthcare Corp.*, No. 12-5876 (FLW/DEA), 2015 U.S. Dist. LEXIS 98627, at *15 (D.N.J. July 29, 2015) (describing this element as the *sine qua non* of a promissory estoppel claim). A plaintiff's "general expectation" of a benefit is insufficient to give rise to a cause of action for promissory estoppel. *See Doe v. Princeton Univ.*, 790 F. App'x 379, 386 (3d Cir. 2019); *E. Orange Bd. of Educ.*, 963 A.2d at 874-75. Further, Genesis's allegations of a three-month "course of conduct" involving unspecified payment and duration terms are far from adequate, particularly where United sought additional information from Genesis in order to gain more insight into Genesis's claims to no avail. *See Haghighi v. Horizon Blue Cross Blue Shield of N.J.*, No. 19-20483 (FLW), 2020 U.S. Dist. LEXIS 157246, at *18 (D.N.J. Aug. 31, 2020) (dismissing medical provider's promissory estoppel claim against insurer where "the pleadings [were] entirely devoid of factual allegations that relate[d] to a fixed or agreed-upon rate of compensation"); *Zhejiang Rongyao Chem. Co., Ltd. v. Pfizer Inc.*, No. 11-5744 (PGS), 2012 U.S. Dist. LEXIS 137136, at *16 (D.N.J. Sept. 21, 2012) (dismissing promissory estoppel claim because the "[c]omplaint is devoid of any specific allegations regarding who communicated the alleged promise . . . when and where it was made, or what the specific parameters of the promise were"). The Court should dismiss Count V.

### D.   Genesis Fails To State A Claim For Violations Of New Jersey HINT Act & HCAPPA (Count VI)

As discussed above, Genesis cannot state a claim for violations of New Jersey's HINT Act or HCAPPA because neither statute affords a private right of action. *See MHA, LLC*, 2021 U.S. Dist. LEXIS 94147, at *18. But in the event the Court elects to imply a private right of action under those statutes (and it should not), the Court should nevertheless dismiss Genesis's claim because the HINT Act and HCAPPA are inapplicable to the very conduct alleged in the Complaint.

Genesis alleges that United failed to pay the claims at issue within the time limits prescribed by the HINT Act, as amended by HCAPPA.  *See* Compl. ¶¶ 82-85.  The relevant provisions of the HINT Act set forth timetables for when insurers must either remit payments for claims that are undisputed, *see* N.J.S.A. § 17B:26-9.1(d)(1) (for individual policies) and § 17B:27-44.2(d)(1) (for group policies) (together, "Section (d)(1)"), or, if the claims are disputed, provide notice of the defect in the claim and instructions for curing the defect, *see* § 17B:26-9.1(d)(2) (for individual policies) and § 17B:27-44.2(d)(2) (for group policies) (together, "Section (d)(2)"). Here, Section (d)(1) cannot apply because, based on Genesis's own allegations, the claims at issue are disputed.  *See, e.g.*, Compl. ¶ 34 (alleging that United sent "requests for clinical records and other supporting documents for the services that Genesis provided United's members and beneficiaries").  Section (d)(1) is therefore inapplicable.  *See Briglia v. Horizon Healthcare Servs.*, Civil Action No. 03-6033 (FLW), 2005 U.S. Dist. LEXIS 18708, at *30-33 (D.N.J. May 13, 2005) (finding Section (d)(1) inapplicable where the insurer disputed the claims at issue).

Section (d)(2), on the other hand, applies where the insurer did not pay within the time prescribed because: (a) "the claim submission is incomplete because the required substantiating documentation has not been submitted to the payer"; (b) "the diagnosis coding, procedure coding, or any other required information to be submitted with the claim is incorrect"; (c) "the payer disputes the amount claimed"; or (d) "there is strong evidence of fraud by the provider and the payer has initiated an investigation into the suspected fraud."   § 17B:26-9.1(d)(2)(a)-(d) and § 17B:27-44.2(d)(2)(a)-(d).  Section (d)(2) further provides that, under these scenarios, the insurer must notify the provider that: (i) "the claim is incomplete with a statement as to what substantiating documentation is required for adjudication of the claim"; (ii) "the claim contains incorrect information with a statement as to what information must be corrected for adjudication of the claim"; (iii) "the payer disputes the amount claimed in whole or in part with a statement as to the

24

basis of that dispute"; or (iv) "the payer finds there is strong evidence of fraud and has initiated an investigation" or "referred the claim, together with supporting documentation, to the Office of the Insurance Fraud Prosecutor." § 17B:26-9.1(d)(2)(d)(i)-(iv) and § 17B:27-44.2(d)(2)(d)(i)-(iv). Genesis does not allege that United failed to provide it with notification required under Section (d)(2). *See Briglia*, 2005 U.S. Dist. LEXIS 18708, at \*33-34 (dismissing claim under the HINT Act where provider failed to allege insurer did not provide required notification under Section (d)(2)). In fact, Genesis's allegations confirm that United did notify Genesis that its claims were incomplete and required substantiating documentation. *See, e.g.*, Compl. ¶ 34. Genesis therefore fails to state a cognizable claim under the HINT Act or HCAPPA.

## IV.   UNITEDHEALTH GROUP INCORPORATED SHOULD BE DISMISSED.

Genesis fails to allege any misconduct by UHG in its Complaint. That is not surprising, as UHG is not named in any of the benefit plans at issue, nor has it administered or paid any claims at issue. Instead, Genesis alleges only that UHG owns its co-defendants and is a profitable corporation. *See* Compl. ¶¶ 2–4, 9. That is not enough. "It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (citation omitted). A plaintiff "seeking to hold a parent corporation liable for the actions . . . of its subsidiary," must "show that the parent corporation caused the affairs of the subsidiary to be so controlled and managed that it could be said that the subsidiary was a mere instrumentality or adjunct or agency of the parent." *Masterson Pers., Inc. v. McClatchy Co.*, Civ. No. 05-1274, 2005 WL 3132349, at \*5 (D. Minn. Nov. 22, 2005) (quoting *Majestic Co. v. Orpheum Cir., Inc.*, 21 F.2d 720, 725 (8th Cir. 1927)). Genesis fails to allege facts satisfying that stringent standard. *See id.* (dismissing claims against parent company because "the Complaint does not contain factual allegations to

support Plaintiffs' claim that [parent] is acting beyond the parameters of its status as an investor in [subsidiary]").  The Court should dismiss UHG.

## CONCLUSION

For the foregoing reasons, United respectfully requests that the Court dismiss Genesis's Complaint in its entirety with prejudice.


Dated: July 9, 2021                              *s/Jenny Kramer*
                                                 Jenny Kramer
                                                 Christopher J. Borchert
                                                 **ALSTON & BIRD LLP**
                                                 90 Park Avenue
                                                 New York, New York 10016
                                                 Tel. (212) 210-9400
                                                 Fax (212) 210-9444
                                                 Jenny.Kramer@alston.com
                                                 Christopher.Borchert@alston.com

                                                 William H. Jordan (admitted *pro hac vice*)
                                                 Jordan Elise Edwards (admitted *pro hac vice*)
                                                 **ALSTON & BIRD LLP**
                                                 One Atlantic Center
                                                 1201 West Peachtree Street
                                                 Atlanta, Georgia 30309
                                                 Tel. (404) 881-7000
                                                 Fax (404) 881-7777
                                                 Bill.Jordan@alston.com
                                                 Jordan.Edwards@alston.com

                                                 *Attorneys for Defendants*